UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ASHLEY G. BROASTER, | ) | No. C 06-05312 JW  (PR) |
| | ) | |
| Petitioner, | ) | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| vs. | ) | |
| | ) | |
| BEN CURRY, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Ashley Broaster, a California state prisoner who is proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a decision by the California Board of Prison Terms ("Board") that he is unsuitable for parole. The Court directed respondent to show cause why the cognizable claim should not be granted. Respondent has filed an answer addressing the merits of the petition, and petitioner has filed a traverse.  Having reviewed the briefs and the underlying record, the Court concludes that petitioner is not entitled to relief based on the claim presented and will deny the petition.

///

///

///

///

## BACKGROUND

The charges against petitioner arose from his rape, robbery, and kidnapping of a woman. In October 1976, petitioner, who had been released from the California Youth Authority two days before, took a butcher knife from his mother's house and travelled to a rich neighborhood in Los Angeles to steal money. Ans., Ex. C (Probation Officer's Report, Feb. 1977) at 3; Id., Ex. B (Life Prisoner Evaluation Report, May 1999) at 2. He watched several individuals park their cars and enter their houses before he could stop them. Id., Ex. B at 2. Petitioner approached the victim, a nineteen year old female, as she stepped out of her car. Id. After forcing her at knifepoint to step into the trunk of her car, he drove the vehicle for about ten minutes, during which time he first thought of raping her, aroused by statements he remembered other inmates at the California Youth Authority made regarding "how great it was to have sex with a white girl." Id. After releasing the victim from the trunk, petitioner ordered her to step into the backseat of the car and to remove her pants. Id. Petitioner then forced her to orally copulate him for roughly half a minute, an experience he found unsatisfactory, and then ordered the victim to remove her underwear, whereupon he raped her, achieving orgasm. Id. Petitioner then again secured the victim in the trunk, drove her to another location, released her, and ordered her to take off her pants, believing that being nude would inhibit her from immediately seeking assistance. Id. Petitioner drove away, keeping the victim's purse. Id.

Two days later, petitioner drove the victim's car to a vehicle service station. Ans., Ex. D (Life Prisoner Evaluation Report, March 2005 Calendar) at 1. After stepping out of the vehicle, petitioner pointed a gun at the attendants while petitioner's juvenile companion stole money. Id. One of the attendants escaped and flagged down a sheriff's car. Id.

A Los Angeles County Superior Court jury found petitioner, who is currently in custody at Soledad State Prison, guilty of kidnapping (Cal. Pen. Code § 209), rape (Id.

§ 261(2) & (3), robbery (Id. § 211), and forced oral copulation (Id. § 288a).[1] Ans., Ex. A (Abstract of Judgment). The trial court sentenced petitioner to a term of seven years to life. Pet. at 2; Ans. ¶ 1. The California Court of Appeal affirmed the judgment. Pet. at 2.

In 2005, the Board found petitioner unsuitable for parole, citing as its reasons that "the offense was carried out in an especially cruel and callous manner" and that the offense was "cold, dispassionate, and calculated." Ans., Ex. E (Transcript of Jul. 26, 2005 parole hearing) at 69-70. In response to the Board's decision, petitioner filed state habeas petitions, all later denied, in the California superior, appellate, and supreme courts. Ans. ¶¶ 11-13. Petitioner filed the instant federal habeas petition in 2006.[2]

As grounds for federal habeas relief, petitioner alleges that the BPT's decision was arbitrary and capricious, in violation of petitioner's constitutional right to due process.[3] Order to Show Cause ("OSC") at 2.

## DISCUSSION

**A.   Standard of Review**

This Court will entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

---

1. This action was transferred to the Northern District from the Central District of California. Docket No. 1.

2. Respondent contends that this court does not have subject matter jurisdiction over the instant petition because California inmates have no federally-protected due process right to parole release. Ans. ¶ 16. Controlling Ninth Circuit authority, however, holds that petitioner has a federally-protected liberty interest in parole release and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2254. See McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Sass v. California Board of Prison Terms, 461 F.3d 1123, 1125 (9th Cir. 2006).

3. Petitioner also contends that the Board's decision violated his state constitutional rights. OSC at 2. Because this is a federal habeas action, the Court will address only petitioner's federal constitutional claims.

The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's

adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.    Petitioner's Claim**

Petitioner alleges that Board's decision was arbitrary and capricious, in violation of his right to due process.[4] OSC at 2.

The Board complies with due process provided that there is "some evidence" to support its decision. The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)); see McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002) (same). Additionally, the evidence underlying the Board's decision must have some indicia of reliability. McQuillion, 306 F.3d at 904. Accordingly, if the Board's determination of parole suitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion, 306 F.3d at 904.

In assessing whether there is "some evidence" to support the Board's denial of parole, this Court must consider the regulations that guide the Board in making its parole suitability determinations. The Board is to consider "all relevant, reliable information

---

4. In his traverse, petitioner contends that respondent failed to address all his contentions. Trav. at 5-6. Petitioner asserts that respondent, and, by implication, the Court, must address the contentions he raised in his state habeas petitions, copies of which he appended to his federal petition. However, in his federal petition, petitioner limits his contentions to those contained in two specifically cited attached pages. Pet. at 5. It is the contentions contained in those two specified pages that respondent, and the Court, have addressed.

available." 15 Cal. Code Regs. § 2402(b). Section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." The regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. 15 Cal. Code Regs. § 2402(c)-(d).[5]

Applying these principles to the instant case, petitioner's claim is without merit. The Court finds that there was some evidence to support the Board's parole decision, based not only on the circumstances of the commitment offense, but also on other relevant considerations. After a full hearing, the Board concluded that petitioner was not suitable for parole and "would pose an unreasonable risk to society and a threat to public safety if released from prison at this time." Ans., Ex. D at 66. As its reasons for this decision, the Board stated that "[t]he offense was carried out in an especially cruel and callous manner" and cited the facts of the crime, such as forcing a nineteen year old to orally copulate him, kidnapping, and rape, crimes that involved premeditation. Id. The rape itself, the Board stated, was committed "in response to what you had heard from other inmates at the California Youth Authority describing how great it was to have sex with a white girl." Id. at 67-68. The Board also found that "[t]he crime demonstrates [] a disregard for human suffering . . . and it is difficult to measure the trauma, humiliation,

---

5. The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id. § 2402(d).

and degradation the victim suffered." Id. at 67.  Furthermore, "the crime was trivial in relationship to the offense in that it was carried out for the purpose of robbery." Id. at 68.

In addition to the nature and circumstances of the commitment offense, the Board considered other parole suitability factors, such as petitioner's unstable social history and his criminal history.  There is evidence that petitioner has an unstable social history, one that includes an irregular and itinerant family life, juvenile criminal offenses, and the use of marijuana and heroin.[6]  The Board, though commending petitioner for being disciplinary-free for over twenty years,[7] his completion of various vocational trainings, and his having realistic parole plans,[8] expressed concern that petitioner "need[s] to gain further insight into the impact that this crime had on [the] victim." Id. at 70, 71.  Because some evidence exists to support the Board's finding of parole unsuitability, the Board's decision has complied with the requirements of due process, and therefore, petitioner's

---

6. Petitioner is a native of British Honduras, which is now Belize, and was raised by his mother's sister and her husband, and then by his paternal grandparents, before coming to live with his mother and his stepfather in the United States at the age of six. Ans., Ex. D (Life Prisoner Evaluation Report, May 1999) at 4.  Petitioner has stated that his stepfather was an alcoholic whose behavior toward petitioner became "more explosive" when he drank. Id. at 5. Often, petitioner's stepfather would "pick fights" with his wife regarding her son. Id.  His stepfather told petitioner, at the age of thirteen, that he "had to go." Id.  Petitioner left the house, lived on the streets for a time before going to live with his natural father, whose location he discovered in the telephone book. Id. at 6.  Eight months after his departure, petitioner's mother brought him to her house to live, though his relationship with his stepfather was still fraught. Id. Feeling rejected, petitioner spent time with other teens who had family problems, and it was about this time that his started committing crimes. Id.  As a teenager, petitioner started to burglarize houses and cars in order to obtain money. Id. at 4.  His actions later resulted in his commitment to the California Youth Authority for eighteen months. Id.  After his release, he found himself unable, and unwelcome, to live with his mother and stepfather, a circumstances that led directly to his commitment offense, which was another attempt to gain money through crime. Id.

7. Petitioner received seventeen serious rules violations while in prison from 1977 to 1984, "including possession of a controlled substance; possession of excessive sedatives; possession of a stabbing instrument (twice); and force and violence." Ans. ¶ 9; Id., Ex. F (Disciplinary Sheet) at 1-2.

8. Because of his criminal history and his not being a United States citizen, federal immigration services may require petitioner's removal after his release from prison.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.jw\hc.06\Broaster312.hcruling.md

claim that the Board's decision was arbitrary and capricious because it was not supported by any evidence fails.

Petitioner also contends that the Board, in violation of due process, failed to adhere to the presumption in favor of parole created by California Penal Code section 3041. Pet. at 5.

Petitioner's claim is without merit. Though section 3041(b) does state that the Board "shall set a release date," thereby perhaps creating a presumption in favor of parole, the statute goes on to say that the Board shall not set a parole release date if "it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual." As stated above, some evidence exists to support the Board's determination that petitioner is unsuitable for parole, thereby overcoming the presumption set forth in section 3041.

## CONCLUSION

Applying the highly deferential standard imposed by AEDPA, this Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2). Accordingly, the Court concludes that petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings and parole hearing. The petition for writ of habeas corpus is DENIED. The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: _May 29, 2008_

JAMES WARE
United States District Judge